No. 23-55189

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

PERRIN BERNARD SUPOWITZ, LLC A CALIFORNIA LLC DBA
INDIVIDUAL FOODSERVICE,

*Plaintiff and Appellant,,*

v.

PABLO MORALES, AN INDIVIDUAL; LEGACY WHOLESALE
GROUP, LLC, AN ARIZONA LIMITED LIABILITY CORPORATION;
SAVINO MORALES, AN INDIVIDUAL; AND  SERGIO ESCAMILLA,
AN INDIVIDUAL; AND DOES 1 THROUGH 20, INCLUSIVE,

*Defendants and Appellees.*

## APPELLANT'S REPLY BRIEF

Appeal from the United States District Court
For the Central District of California in No. 2:22-cv-02120-ODW-JEM
The Honorable Otis D. Wright, II

KILPATRICK TOWNSEND & STOCKTON
EMIL W. HERICH (CA Bar No. 116783)
EHerich@kilpatricktownsend.com
1801 Century Park East Suite 2300
Los Angeles, CA  90067
Telephone:    310-248-3830

CDF LABOR LAW LLP
DAN M. FORMAN (CA Bar No. 155811)
DForman@cdflaborlaw.com
AMY S. WILLIAMS (CA Bar No. 228853)
AWilliams@cdflaborlaw.com
707 Wilshire Blvd., Suite 5150
Los Angeles, CA  90017
Telephone:  213-612-6300
**Attorneys for Plaintiff and Appellant**

# TABLE OF CONTENTS

1.  INTRODUCTION ........................................................................................6

2.  ARGUMENT..............................................................................................11

    A.  Defendants Have Failed to Effectively Dispute
        that the District Court Erred in Not Finding IFS's
        Customer-Related Information is Entitled to
        Trade Secret Protection ....................................................................11

    B.  Knowledge of Contact Information Constitutes
        the Possession of Trade Secret Information
        Where that Information Meets the Requirements
        of CUTSA.........................................................................................17

    C.  Defendants' Acts of Extreme Disloyalty
        Constitute Unfair Competition Under California
        Law and Fully Support the Granting of the
        Injunctive Relief Requested .............................................................19

    D.  Defendants Fail to Cite any Relevant Authority
        Supporting the District Court's Elevating
        California's Employee Mobility Policy Over its
        Policy of Protecting Trade Secrets ...................................................22

    E.  The District Court's "Stale Information" Finding
        Does Not Withstand Analysis ..........................................................24

3.  CONCLUSION...........................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.L. Laboratories, Inc. v. Philips Roxane, Inc.*,
   803 F.2d 378 (8th Cir. 1986) ........................................................................ 29

*Abba Rubber Co. v. Seaquist*,
   235 Cal.App.3d 1 (1991) ................................................................ 12, 13, 15

*American Paper & Packaging Products, Inc. v. Kirgan*,
   183 Cal.App.3d 1318 (1986) .......................................................... 13, 14

*Arkansas Project v. Shaw*,
   775 F.3d 641 (5th Cir. 2014) ...................................................................... 26

*ATC Distribution Group, Inc. v. Whatever It Takes Transmission &
   Parts, Inc.*,
   402 F.3d 700 (6th Cir. 2005) .................................................................. 14, 17

*Bowerman v. Field Asset Servs., Inc.*,
   60 F.4th 459 (9th Cir. 2023) ...................................................................... 20

*Chartwell Staffing Services, Inc. v Atlantic Solutions Group*,
   2019 WL 2177262 (C.D. Cal. May 20, 2019) ................................. 10, 14, 23

*Cisneros v. U.D. Registry, Inc.*,
   39 Cal.App.4th 548 (1995) .......................................................................... 26

*Coast Hematology-Oncology Associates Medical Group, Inc. v.
   Long Beach Memorial Medical Center*,
   58 Cal.App.5th 748 (2020) .......................................................................... 20

*Courtesy Temporary Services v. Camacho*,
   222 Cal.App.3d 1278 (1990) .............................................................*passim*

*Davis v. Farmers Ins. Exchange*,
   245 Cal.App.4th 1302 (2016) .................................................................... 21

*Dowell v. Biosense Webster, Inc.*,
   179 Cal.App.4th 564 (2009) ...................................................................... 23

*Edwards v. Arthur Andersen, LLP*,
    44 Cal.4th 937 (2008) ..................................................................... 23

*Extreme Reach, Inc. v. Spotgenie Partners, LLC*
    2013 WL 12081182 (C.D. Cal. Nov. 22, 2013) ............................. 12

*Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*,
    654 F.3d 989 (9th Cir. 2011) ......................................................... 26

*Fortna v. Martin*,
    158 Cal.App.2d 634 (1958) ........................................................... 12

*Gafcon, Inc. v. Posner & Associates*,
    98 Cal.App.4th 1388 (2002) .................................................... 21, 22

*Greenly v. Cooper*,
    77 Cal.App.3d 382 (1978) ................................................................ 9

*Hollingsworth Solderless Terminal Co. v. Turley*,
    622 F.2d 1324 (9th Cir. 1986) ..................................................... 9, 15

*Independent Technologies, LLC v. Otodata Wireless Network, Inc.*,
    836 Fed.Appx. 531(9th Cir. 2020)................................................. 29

*International Paper Co. v. Suwyn*,
    966 F.Supp. 246 (S.D.N.Y.) .......................................................... 27

*K.C. Multimedia, Inc. v. Bank of America Technology & Operations,
Inc.*,
    171 Cal.App.4th 939 (2009) .......................................................... 20

*Language Line Services, Inc. v. Language Services Associates, Inc.*,
    2013 WL 1217320 (N.D. Cal. June 25, 2013)................................. 27

*Morlife, Inc. v. Perry*,
    56 Cal.App.4th 1514 (1997) .....................................................*passim*

*Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*,
    636 F.3d 1150 (9th Cir. 2011) ....................................................... 26

*Perfect 10, Inc. v. Google, Inc.*,
    653 F.3d 976 (9th Cir. 2011) ......................................................... 26

*ReadyLink Healthcare v. Cotton,*
    126 Cal.App.4th 1006 (2005) (*ReadyLink*) ...............................................*passim*

*Retirement Group v. Galante,*
    176 Cal.App.4 (2009) ............................................................................ 17, 18

*Semper/execter Paper Company LLC v. Henerson Specialty,*
    2009 WL 10670619 (C.D. Cal. Sept. 21, 2009) (*Semper*) ........................ 13, 14

*Singleton v. Wulff,*
    428 U.S. 106 (1976) ...................................................................................... 28

*SOS Co., Inc. v. E-Collar Technologies, Inc.,*
    2012 WL 12897998 (C.D. Cal. Oct. 17, 2012) ............................................. 20

*UTStarcom, Inc. v. Starnent Networks, Corp.,*
    675 F.Supp.2d 854 (N.D. Ill.) ........................................................................ 27

*Wanke, Industrial, Commercial, Residential, Inc. v. Keck,*
    209 Cal.App.4th 1151 (2012) ........................................................................ 23

*WeRide Corp. v. Kun Huang,*
    379 F.Supp.3d 834 (N.D. Cal. 2019) .............................................................. 29

*Whyte v. Schlage Lock Co.,*
    101 Cal.App.4th 1443 (2002) ........................................................... 19, 25, 26

*Winter v. Natural Resources Defense Council, Inc.,*
    555 U.S. 7 (2008) .......................................................................................... 26

**Statutes**

California Business and Professions Code section 16600 ................................... 23

California Business and Professions Code section 17200 et seq. .......................... 8

California Civil Code Section 3426.1(d) ............................................................ 17

California Civil Code Section 3426.2 (a) ........................................................... 28

## 1.    INTRODUCTION

Almost by sleight of hand Defendants/Appellees (hereinafter
"Defendants") attempt to make disappear any consequences of their
egregious breaches of loyalty committed while employed by
Plaintiff/Appellant Perrin Bernard Supowitz, LLC, dba Individual
Foodservice ( hereinafter "IFS").  This malfeasance resulted in a windfall
for Defendants who saw their competing start up business, Legacy
Wholesale Group, LLC ("Legacy"), obtain a profit margin of 19.93% on
gross sales of $1,389,362.12 within just eight months of commencing
operation.  (5-ER-1224-1225, 8-ER-1774).  The concomitant resulting
damage to IFS was that it saw a diminution of revenues in the amount of
$605,000 from its customers previously serviced by Defendants Pablo
Morales and Savino Morales over a commensurate period of time. (5-ER-
1224-1225.)

Defendants throughout their brief repeat the same mantra that rang
true with the District Court, i.e., that there was no evidence presented of
misappropriation of IFS's trade secrets committed after March 31, 2022,
and the information that was admittedly misappropriated has no continuing
value.  Answering Brief, pp. 6-7.  Defendants' conclusions are rebutted by
the evidence and defy common sense.  As noted in IFS's opening brief,
Defendants' principal, Sergio Escamilla, testified that he considered
Legacy's customer-related, vendor and pricing information (the same type
of information that IFS contends to be its trade secrets) to be valuable to
both Legacy and its competitors.  (3-ER-505.)  Savino Morales admitted
that his customer contact information had value to him and that he did not
want it disclosed to others.  (3-ER-462-463.)  Defendants never explain,
because there is no explanation, why the inherent value of IFS's customer-

related information including decision maker cell phone numbers, customer purchase preferences and acceptable credit terms suddenly dissipated with the mere passage of time.

Defendants go on to mention in their introduction/summary IFS's knowledge of its need to present strong evidence of continued misappropriation given that "the District Court had denied IFS's request for a temporary restraining order primarily due to a lack of evidence" and Defendants also reference the heavy burden that IFS was required to meet to obtain a preliminary injunction. Answering Brief, p. 7. The application for a TRO was denied because the District Court found that IFS failed to show immediate and irreparable injury ("For example, nowhere in the Application does IFS name or refer to a specific client or transaction that it lost due to Defendants' activities.") Dkt. 22. IFS's motion for preliminary injunction rectified those deficiencies by providing evidence of the specific business lost to Legacy including, but not limited to, that of Red Hot Chilis, Inc. whose manager, Ishmael Lopez, provided a sworn declaration in support of the motion. (6-ER-1269-1271.) As to the heavy burden that must be met to obtain injunctive relief, IFS has cited this Court to no less than seven cases in which preliminary injunctions were granted, ordered or affirmed on facts much less compelling than those present here. On the other hand, Defendants have failed to cite to even one post CUTSA case in which an injunction has been denied where similar facts were extant.

Defendants in their introduction feign ignorance as to what IFS is challenging on appeal. Answering Brief, p. 8. However, as was clear from its opening brief, IFS is challenging the denial of its motion to enjoin Defendants from using IFS's trade secrets, soliciting its customers and hiring its employees, the very same relief that was granted in the cases IFS

cited to this Court, including *Courtesy Temporary Services v. Camacho*, 222 Cal.App.3d 1278 (1990) ("*Courtesy*") and the parade of cases that have followed its holding. IFS's challenge on appeal includes all of the District Court's rulings that are "inextricably intertwined" with the order denying the preliminary injunction, including, but not limited to, the District Court's dismissal of IFS's UCL[1] claim for relief. That Defendants are feigning confusion as to the rulings being challenged on appeal is apparent from the fact that they spend multiple pages of their Answering Brief attempting to defend the District Court's ancillary rulings.

Defendants in their introduction/summary move on to try to limit the issues to be decided in this appeal to IFS's purported contention that its customer lists and contact information constitute the totality of its trade secrets and whether IFS is entitled to enjoin Defendants from soliciting IFS's customers. Answering Brief, p. 9. As to the first issue, Defendants in their introduction/summary preface their unsupported argument (the "niche market" argument) that "California law only finds customer lists to be protectable trade secrets when it is difficult to identify potential customers of the services at issue." As demonstrated below, this is a misstatement of California law which affords trade secret protection to an employer's customer lists in a vast array of industries requiring only that they be the product of time and effort to compile and that their use enable the former employee "to solicit both more selectively and more effectively." *Morlife, Inc. v. Perry*, 56 Cal.App.4th 1514, 1522 (1997) ("*Morlife*").

---

[1] All shorthand references herein to California's "UCL" are to its Unfair Competition Law codified at California Business and Professions Code section 17200 et seq.

Defendants' next attempt to minimize the importance of such information, by arguing that customer contact information is easily obtainable and, in any event, in this case was simply the product of Pablo Morales and Savino Morales' powers of recollection. Answering Brief, p. 10. However, it is not the inability to ascertain the customer-related information that determines its trade secret status. This Court itself has clearly acknowledged that, even if the customer names could be found in telephone books or trade directories, such public sources "would not disclose the persons who ultimately made up the list of plaintiff's customers" that would be receptive to the defendant's solicitations. See *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1332-1333 (9th Cir. 1986) ("*Hollingsworth*").

Moreover, the claimed fact that Pablo Morales and Savino Morales happened to recall all of their customers' contact information, including cell phone numbers, simply from memory, in addition to being highly dubious, does not absolve them from trade secret misappropriation. Savino Morales went to the effort to steal IFS's Account Contact Spreadsheet and to email it to his wife for his future use which he would have no reason to do if the information it contained was locked in his memory. (8-ER-1867-1875.) Moreover, and in any event, California courts have held that "to afford protection to the employer, the [trade secret] information need not be in writing but may be in the employee's memory." *Greenly v. Cooper*, 77 Cal.App.3d 382, 392 (1978) ("*Greenly*").

Defendants also initially question and attack IFS's "extreme position" that they should be barred from doing business with the customers that Pablo Morales and Savino Morales serviced while at IFS. Answering Brief, pp. 10-11. However, IFS's position is not extreme at all.

This is the very same relief granted to the plaintiffs/employers in the numerous cases cited in IFS's opening brief, including, but not limited to *Courtesy*. Defendants, on the other hand, have cited the Court to no recent California case in which such relief was denied on evidence similar to that which was presented below.

Defendants next return to their drum beat argument that there is simply not strong enough evidence of either continuing usefulness of the alleged trade secrets or continuing "fresh acts of misappropriation." Answering Brief, p. 11. Defendants ignore the glut of evidence presented of past misappropriation and take refuge in the fact that, because they no longer work under the scrutiny of IFS, any present misappropriation will be difficult to prove. However, the relevant authorities fully recognize the inherent difficulty in obtaining strong evidence of continued misappropriation. These cases note that "misappropriation and misuse can rarely be proved by convincing direct evidence." *Chartwell Staffing Services, Inc. v Atlantic Solutions Group*, 2019 WL 2177262 (C.D. Cal. May 20, 2019) ("*Chartwell*") at \*9. For this reason, courts have stated that plaintiff's must "construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences… that it is more probable than not what plaintiff is alleging did in fact take place." *Id*. IFS presented a more than sufficient web to capture the misappropriation committed by Pablo Morales and Savino Morales and the continuing damage attributable thereto.

Finally, in their summary, Defendants introduce their argument that IFS's assertion that a valid purpose of injunctive relief is to eliminate the commercial advantage obtained from a prior trade secret misappropriation has been waived. Answering Brief, pp. 11-12. This argument was

preserved by IFS's contention below that it had been irreparably harmed by Defendants' acts. (3-ER-519-520.) Moreover, the facts supporting the unfair boost received by Defendants on account of the misappropriation of IFS's trade secrets abound in the record including the "amazing" success of the start-up business, Legacy, which just eight months after commencing operations, was earning over 19% profits on gross sales of almost $1.4 million dollars. (5-ER-1224-1225, 8-ER-1774).

2.   **ARGUMENT**

> **A. Defendants Have Failed to Effectively Dispute that the District Court Erred in Not Finding IFS's Customer-Related Information is Entitled to Trade Secret Protection**

Defendants begin their arguments concerning the trade secret status of IFS's customer-related information with a diatribe regarding the competitive nature of IFS's business and how virtually any company in the food service industry is a potential customer of IFS or Legacy. Answering Brief, p. 14. Defendants miss the point. Nearly all businesses operate in a competitive environment otherwise they would constitute an illegal monopoly. What Defendants illegally gained by their trade secret misappropriation is that they knew exactly who IFS's customers were, what they bought from IFS, how much they paid IFS for their products and what credit terms these customers would accept. This information permitted Defendants to easily and effectively solicit IFS's customers by offering them products comparable to the specific items they were purchasing from IFS at better prices. Without this information, the start-up company, Legacy, would have been unable to dislodge and retain these accounts from the established IFS.

The absolute speciousness of Defendants' arguments is fully borne out by a review of the authorities they have cited in support of their fountain head argument that California law does not protect customer lists when it is easy to determine who the potential customers are for a given business, i.e., customer lists amount to trade secrets only for businesses operating in "niche markets." The first case that Defendants site in support of their "niche market" theory is *Fortna v. Martin*, 158 Cal.App.2d 634 (1958) ("*Fortna*"). However, *Fortna*, Defendants' lead in authority, cannot possibly be reflective of current California trade secret law because it was decided in 1958, almost 30 years prior to the enactment of the California Uniform Trade Secret Act ("CUTSA") in 1984. That Defendants begin their sojourn with a case that was decided long prior to the enactment of the statute that is a principal basis for this appeal reveals much about the correctness of the path they have taken. In this regard, no California case has followed *Fortna* since the enactment of CUTSA.

The next case that Defendants cite in support of their argument that California law provides protection to customer lists only for businesses operating in niche markets is *Abba Rubber Co. v. Seaquist*, 235 Cal.App.3d 1 (1991) ("*Abba Rubber*"). Before explaining why this citation is as curious as the first one, it is worth noting that no California authority has ever held that trade secret protection for customer lists is confined to "niche markets" and *Abba Rubber* did not so state. Indeed, customer lists have qualified as trade secrets for businesses operating in a vast array of industries: temporary office staffing (*Courtesy*); commercial roofing repair (*Morlife*), nursing (*ReadyLink Healthcare v. Cotton,* 126 Cal.App.4th 1006 (2005) (*ReadyLink*)) video and audio advertising (*Extreme Reach, Inc. v. Spotgenie Partners, LLC* 2013 WL 12081182 (C.D. Cal. Nov. 22, 2013));

and paper product sales (*Semper/execter Paper Company LLC v. Henerson Specialty*, 2009 WL 10670619 (C.D. Cal. Sept. 21, 2009) (*Semper*)).

Defendants' citation to *Abba Rubber* is a curious one in that the opinion in that case actually affirmed the trial court's finding that the plaintiff's customer list was a trade secret. *Abba Rubber*, *supra*, 235 Cal.App. at 21. *Abba Rubber* held that customer information that a plaintiff possesses may constitute a protectible trade secret if it indicates to competitors a fact they previously did not know: that the listed businesses use the goods or services which the competitors sell. *Id.* at 19. Such is the case here. Defendants were able to offer IFS's (now) former customers the specific products that, because of Defendants' possession of IFS's trade secret information, they knew those customers were in the market to purchase. (6-ER-1269-1271.)

After first citing to a case decided prior to the applicable statute and then to a case whose holding favors IFS, Defendants move on to cite this Court to *American Paper & Packaging Products, Inc. v. Kirgan*, 183 Cal.App.3d 1318 (1986) ("*American Paper*"), for the proposition that customer information is not subject to protection if it is known or readily ascertainable in the industry, which Defendants contend is the case with IFS's information. Answering Brief, p. 16. Defendants neglect to advise the Court that the list of cases that have rejected and refused to follow *American Paper* on this point is a very long one. The list of cases rejecting *American Paper* include all of the following: the afore mentioned *Abba Rubber*, *supra*, 235 Cal.App. at 21 ("…we decline to follow [*American Paper*] to the extent that it suggests that information is not protectible as a trade secret if it is 'known *or readily ascertainable*'"); *Courtesy*, supra, 222 Cal.App.3d at 1286 ("*American Paper* misconstrued California trade secret

law and its legislative intent, and we decline to rely on the decision in this case"); *Chartwell*, *supra*, 2019 WL 2177262 at * 8 ("Further, 'subsequent cases have declined to follow *American Paper*, which predates California's adoption of the USTA'"); and *Semper*, *supra*, 2009 WL 10670619 at * 5 ("But *American Paper* has been uniformly rejected by later courts.")

Finally, Defendants cite to *ATC Distribution Group, Inc. v. Whatever It Takes Transmission & Parts, Inc*. ("*ATC*"), 402 F.3d 700 (6th Cir. 2005). The first obvious problem with Defendants' reliance on *ATC* is that it is a Sixth Circuit case applying the law of the State of Kentucky, not California law. *Id.* at 714. *ATC* does mention in passing the California case of *Morlife*, but that is the only California case referenced in the opinion. Moreover, *ATC* based its decision, as did the lower court in that case, on the fact that "ATC can point to no evidence that the identities of transmission parts customers contained on its customer list was obtained through great effort or expense, or that the names on the list were not discoverable from a telephone book or similar legitimate source." *ATC*, *supra*, 402 F.3d at 714. Here, IFS did provide evidence that its trade secrets were the product of time, effort and expense. (6-ER-1252) ("IFS, over the course of many years and at great expense, developed valuable confidential trade secret information including: … sales data reports detailing confidential customer data including customer name, customer contact or contacts, decision maker, decisionmaker's contact information, direct dial, cell phone, customer credit ratings, payment history, profitability including markup, order histories, sales volume, product assortment, manufacturers names for each item, and trends that could be used to promote greater sales....") In addition to being factually distinguishable, *ATC*'s primary legal conclusion, that customer names

discoverable from a phone book or similar legitimate source can never be trade secrets, is simply not the law of California (see *Abba Rubber*, *supra*, 235 Cal.App.3d at 21), or this Circuit (*Hollingsworth*, *supra*, 622 F.2d at 1332-1333).

After being unable to cite the Court to any applicable law holding that IFS' customer lists are not protectable trade secrets, Defendants' unsuccessfully attempt to attack IFS's authorities. Defendants attempt to relegate *Courtesy* to a distant stall in its illusory stable of niche market cases by stating that it emphasized that the list of customers was valuable because of how difficult and expensive it was to identify who were the potential customers for the services rendered (the provision of temporary workers). Answering Brief, p. 17. However, *Courtesy* also stated that: "A list of customers or subscribers 'built up by ingenuity, time, labor and expense of the owner over a period of many years is property of the employer,' and '[k]nowledge of such a list, acquired by an employee by reasons of his employment may not be used by the employee as his own property or to his employer's prejudice.'" *Courtesy, supra*, Cal.App.3d at 1287. As noted above, IFS presented evidence that its customer list was the product of significant time, effort and expense, as such it is a protectable trade secret under California law.

IFS next moves on to *Morlife*. IFS states that under *Morlife*, a customer list can be found to have economic value only when its disclosure would allow a competitor to direct its sales efforts to the customers who have already shown a willingness to use a unique type of service or product as opposed to a list of people who only might be interested. Answering Brief, pp. 18-19. But, according to *Morlife*, the primary requirement for trade secret protection is that the customer's information is the result of

significant time and effort and that "its use enables the former employee 'to solicit more selectively and more effectively.'" *Morlife, supra*, 56 Cal.App.4 at 1522. In this case, Savino Morales and Pablo Morales used IFS' confidential business information to know what specific products were of interest to IFS's customers at what specific prices. Defendants then utilized this information to effectively solicit 17-22 of IFS' customers and to reach sales of $852,590 in just eight months from such customers. (8-ER-1774.)

Defendants, likewise, try to minimalize *ReadyLink*, another indistinguishable case, in which the same injunctive relief requested by IFS below was first granted by the trial court and then affirmed by the Court of Appeal on similar facts. Defendants first note that in *ReadyLink*, the employer provided trained health care workers not simply any workers. Defendants also state that ReadyLink "invested a great deal of time, money, and effort developing its database of nurses and healthcare provider customers." Answering Brief, p. 19. Defendants, however, do not explain how or why the market for such healthcare providers (e.g. hospitals, assisted living facilities, etc.) is substantively different than the market for restaurant supplies. Defendants also fail to distinguish the fact that IFS, like the plaintiff in *ReadyLink*, produced evidence that its customer list information was produced over the course of many years and at great expense. In the end, there is simply no meaningful difference between the *ReadyLink* databases containing lists of "ReadyLink nurses, employees, and healthcare facility customers, compilations of compensation, employment preferences, contact information, nurse application and tests, and ReadyLink's unique per diem program" found to be protectable trade secrets in *ReadyLink*, and IF' similar customer-related information found

not to warrant injunctive relief in this case.

### B. Knowledge of Contact Information Constitutes the Possession of Trade Secret Information Where that Information Meets the Requirements of CUTSA

As explained in IFS's opening brief, pursuant to CUTSA, a trade secret is essentially any business information that (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. California Civil Code Section 3426.1(d). IFS explained in some detail in its opening brief why its confidential business information met both these requirements.

Defendants in their Answering Brief argue to the contrary that knowledge of customer contact information is not a trade secret and that the District Court did not abuse its discretion when it found, "[f]or any given customer (say, a restaurant) any supplier (IFS, Legacy or one of its competitors) could simply call or email the restaurant and ask for the name or contact information of the person responsible for ordering supplies for the restaurant." Answering Brief, p. 20. Such finding, in addition to being contrary to the evidence presented, begs the question that, if such was so, why did Pablo Morales and Savino Morales, go through the time and effort of stealing IFS's account information which contained exactly such information.

Moreover, the only authorities that Defendants cite to support the District Court's decision that readily ascertainable information can never be a trade secret is *ATC*, the Sixth Circuit case applying Kentucky law on distinguishable facts and *Retirement Group v. Galante,* 176 Cal.App.4,

1226, 1240 (2009) ("*Galante*"). As a former authority, IFS has explained above why it is inapposite. As to the latter authority, *Galante*, the court in that case addressed a situation in which an injunction had been issued which both (1) precluded the defendants from utilizing the plaintiff's trade secrets to compete and (2) from soliciting plaintiff's customers. The Court of Appeal, in a decision that did not discuss any of the authorities on which this appeal is based, held that the ban on solicitation could not be upheld because the injunction on misuse of trade secret information provided the plaintiff with everything it was legally entitled to obtain. The court in that case was also influenced by the fact that certain factual concessions made by the plaintiff precluded the customer list information from constituting protectable trade secrets. *Galante* fully recognized and acknowledged, however, that California courts have repeatedly held that a former employee may properly be barred from soliciting existing customers to redirect their business from the former employer and to the employees new business if the employee is using trade secret information to solicit these customers. *Id*. at 1237.

Defendant's conclude their argument as to contact information not being a protectable trade secret with the assertion that the fact that Savino Morales and Pablo Morales previously personally serviced the IFS's customers that they captured for Legacy immunizes them from being enjoined from using IFS's trade secret information to solicit business from those customers. "If simply knowing the (over sixth month old) cell phone number of a manager at a business could justify an injunction, then Savino and Pablo's right to compete under California law would be effectively nullified.") Answering Brief, p. 22. But, *Morlife* rejected the very argument made by Defendants.

*Morlife* expressly held that when a customer list, including decision maker contact information, met the statutory definition of a trade secret, solicitation of the employer's customers was enjoinable regardless of whether the former employee personally had previously serviced the customer for their former employer or not:

> There is no legitimate reason for characterizing differently the conduct of a former employee who uses customer information personally developed for the employer during the period of employment from the use of the very same information developed by a co-worker who had no customer contact. Creating an artificial distinction between the conduct of these two employees under the rubric of commercial impracticality in not being able to "wipe clean" one former employee's memory constitutes an unjustified abandonment of legitimate regulation of competitive activity, and ignores the paramount interest in protecting information meeting the definitional criteria of a trade secret.

> (*Morlife*, *supra*, 56 Cal.App.4th at 1526)

Defendants citation to *Whyte v. Schlage Lock Co.*, 101 Cal.App.4th 1443, 1446 (2002) and its rejection of the doctrine of inevitable disclosure is similarly discordant because this case does not involve any assumed damage attributable to an assumed misappropriation of trade secrets but, rather, actual proven damages attributable to proven misappropriation. (See e.g., 5-ER-1230, 6-ER-1257-1258, 6-ER-1270-1271.)

### C. Defendants' Acts of Extreme Disloyalty Constitute Unfair Competition Under California Law and Fully Support the Granting of the Injunctive Relief Requested

Defendants' arguments that IFS' s appeal based on California's UCL

must be rejected are meritless. First, contrary to Defendants' assertion, IFS is, indeed, challenging the District Court's dismissal of its UCL claim for relief. IFS's opening brief expressly stated that this Court had pendant jurisdiction over the claims "raised in conjunction with the other issues properly before the court … if the rulings [are] inextricably intertwined or if the review of the pendant issue [is] necessary to ensure meaningful review of the independently reviewable issue," citing *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 480 (9th Cir. 2023). Brief of Appellant, p. 3. By its assertion that California's UCL provides an additional proper basis for injunctive relief, IFS brought the District Court's dismissal of its UCL claim within the purview of review by this Court.

Second, as demonstrated in IFS's opening brief, both *Courtesy* and *ReadyLink* fully and expressly held that California's UCL provided an independent basis for injunctive relief on facts indistinguishable from the egregious acts of employee malfeasance and disloyalty present here. *Courtesy*, *supra*, 222 Cal.App.3d 1291-1292; *ReadyLink*, *supra*, 126 Cal.App.4th at 1020-1021. In their Answering Brief, Defendants cite *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171 Cal.App.4th 939 (2009) ("*K.C. Multimedia*"), *Coast Hematology-Oncology Associates Medical Group, Inc. v. Long Beach Memorial Medical Center*, 58 Cal.App.5th 748 (2020) and *SOS Co., Inc. v. E-Collar Technologies, Inc.*, 2012 WL 12897998 (C.D. Cal. Oct. 17, 2012) in support of its position that CUTSA preempts any and all UCL claims related to trade secrets. Answering Brief, pp. 24-26. But the state court cases cited by Defendants, which do not even mention, much less distinguish, *Courtesy* or *ReadyLink*, are not on point in that they did not involve the egregious acts of employee malfeasance present in *Courtesy*, *ReadyLink* and in this case.

The UCL claims in these cases do not arise exclusively from the exact same facts as the CUTSA cause of action so as to allow a court to properly conclude that the UCL claim is preempted by the CUTSA claim. IFS also submits that *Courtesy* should be deemed controlling as to the issue of whether UCL injunctive relief is available to IFS over the district court authority relied upon by Defendants.

Defendants also argue that even if IFS's UCL claim was not preempted and even if it was not waived (and the claims are not preempted nor were they waived), California's UCL would not be a proper basis for injunctive relief because there is no threat that the wrongful conduct previously committed will continue, citing *Davis v. Farmers Ins. Exchange*, 245 Cal.App.4th 1302, 1326-27 (2016) ("*Davis*"). Answering Brief, p. 26. *Davis*, however, is completely inapposite in that it is a wrongful termination/failure to pay wages case which did not involve trade secret misappropriation at all. Rather, *Davis* held that injunctive relief was not available to preclude an insurance company from engaging in wrongful employment practices against the plaintiff after the termination of plaintiff's employment because there was no likelihood that the plaintiff would be harmed in the future by his former employer. *Davis*, *supra*, 245 Cal.App.4th at 1327 ("[Plaintiff] is not employed by Farmers, and there is no reasonable likelihood he will be at any time in the future or will otherwise be in a position to be harmed by Farmers's actions"). Unlike the plaintiff in Davis, IFS continues to be in position to be harmed by Defendants use of IFS's trade secret information.

Defendants also cite the similarly inapposite case of *Gafcon, Inc. v. Posner & Associates*, 98 Cal.App.4th 1388, 1402, n. 6 (2002). *Gafcon* was a case in which the plaintiff insured sued the defendant insurance company

and its in house counsel over the representation provided by the in house counsel to the insured plaintiff. The court held that the plaintiff was not entitled to declaratory relief or injunctive relief as to the in house counsel because the in house counsel had been ordered relieved as the plaintiff's counsel and, therefore, there was no risk of future harm to plaintiff from his former lawyer. *Id.* at 1402-1404. Defendants' failure to cite the Court to any trade secret misappropriation cases and their reliance instead on obviously inapposite insurance and employment law cases belies the lack of substance of their arguments.

     **D.**     **Defendants Fail to Cite any Relevant Authority Supporting the District Court's Elevating California's Employee Mobility Policy Over its Policy of Protecting Trade Secrets**

In their Answering Brief, Defendants attempt to salvage the District Court's ruling by arguing that unfair consideration was not given to the California policy interest of promoting employee mobility. Answering Brief, p. 28. In making their argument, Defendants return to their familiar refrain that there was no evidence presented that they were continuing to use or benefit from IFS's customer-related information. IFS submits that there was substantial evidence of misuse presented but the District Court elected to ignore that evidence. There was undisputed evidence that Pablo Morales and Savino Morales illegally absconded with IFS's account contact information (see discussion and citation to the record at Brief of Appellant pp. 9-11). There was evidence presented that they used their knowledge of IFS's pricing and credit terms to divert business from IFS to Legacy. (6-ER-1257, 1270-1271.) There was evidence that Defendants' start up business was an instant success raking in a 19.03% profit margin

(5-ER-1224) on gross sales of $1,389,868 from August 1, 2021 through March 31, 2021 (8-ER-1774). There was evidence presented that Defendants were continuing to actively pursue IFS accounts. (4-ER-777-778). There was evidence that a food distributor's loss of a customer often becomes permanent as customers prefer not to switch distributors, absent significant cost savings. (7-ER-1678-1679). This evidence was sufficient to compel a finding that California's policy of protecting trade secrets prevailed over its employee mobility policy so as to warrant injunctive relief. A similar or lesser showing was certainly enough to warrant such relief in *Courtesy*, *Morlife*, *ReadyLink*, *Chartwell*, *Semper*, and multiple other trade secret misappropriation cases.

Defendants vainly attempt to overcome the *Courtesy/Morlife*, *ReadyLink* line of cases but, once again, they are forced to rely on inapposite authority. Plaintiff's cite the Court to *Edwards v. Arthur Andersen, LLP*, 44 Cal.4th 937, 945 (2008) ("*Edwards*"). *Edwards* was a case concerning the enforceability of a non-compete agreement and whether a certain termination of non-compete agreement was unlawful. *Id.* at 941-942. The California Supreme Court expressly did not address the trade secret exception to California Business and Professions Code section 16600. *Id.* at fn. 4. Defendants also cite to dicta in *Dowell v. Biosense Webster, Inc.*, 179 Cal.App.4th 564 (2009). Although the court in that case ruminated over the continued viability of common law trade secret exception to covenants not to compete, it expressly stated that "we need not resolve the issue here."[2] *Id.* at 577. Thus, Defendants have cited no actual

---

[2] Subsequent California cases have continued to recognize the existence of a trade secret exception to the policy precluding non-compete agreements. *Wanke, Industrial, Commercial, Residential, Inc. v. Keck*, 209 Cal.App.4th 1151, 1178 (2012).

holding of any court that supports their position.

### E. The District Court's "Stale Information" Finding Does Not Withstand Analysis

Defendants begin their "stale information" argument, in case the Court missed it before, with yet another recitation that Plaintiff has not proven that Defendants are continuing to use IFS's trade secrets or that the use of such information is causing IFS any continued lost sales (ignoring, of course, the evidence of just such lost sales (5-ER1225-1226)). Defendants, ironically, then concede that IFS's officer, Jeremy Shapiro, in fact, explained in his declaration exactly why IFS's trade secret information was currently still entirely useful to Defendants. Answering Brief, p. 34. IFS's evidence of prior misappropriation coupled with the undisputed nature of both Legacy's instantaneous success and IFS's lost revenues should have resulted in the injunctive relief being requested being granted by the Court. As demonstrated above, the exact same evidence, devoid of any direct proof of other continuing harm was sufficient to cause numerous courts to grant the injunctive relief requested.

Defendants then argue that IFS made no effort to rebut Defendants' evidence that the alleged trade secret was no longer useful because it was over six months old. Answering Brief, p. 35. Defendants point to a declaration from a former supervisor of Pablo Morales and Savino Morales to "prove" their point. But the evidence of this former employee whose motivation in providing a declaration against his former employer stating that pricing information, sales information, credit information and customer order information have no value after six months should have raised eyebrows especially given the more credible evidence presented by IFS that Defendants themselves consider Legacy's information of the same ilk

to be of value to themselves and that it would have value to its competitors. (3-ER 620-624). When Defendants' admissions as to the value of their contact, pricing and credit information is added to the other evidence before the District Court including the time and effort that IFS spent obtaining confidentiality agreements from its employees, the installation of the multi-factor password protected computer system that it put in place to safeguard its customer-related information and the continuing financial impact that Defendants have had on IFS's revenues, the highly questionable evidence presented that IFS's trade secrets had no value after six months truly should have been given no weight whatsoever.

After discussing the facts, Defendants turn to the law. Defendants take issue with IFS's citation to *Whyte*, *supra*, 101 Cal.App. at 1443. IFS cited to Whyte because it was the only California case to even mention the concept of the "stale" information. Defendants contend that Whyte rejected the "stale information" concept only in a procedural context inapplicable to the instant case. Answering Brief, p. 36. But as Defendants acknowledge, *Whyte* declined to accept the "stale information" defense because "Whyte cites no evidence or authority showing an injunction is no longer necessary to eliminate whatever commercial advantage he might have obtained through the alleged misappropriation." *Id.* at 1452. The exact same thing can be said of Defendants, they have provided no evidence or authority that an injunction is not necessary to eliminate the commercial advantage they obtained from the misappropriation of IFS's trade secrets and, therefore, their purported "stale information" defense should have been rejected by the District Court.

Defendants go on to observe that, in *Whyte*, the court affirmed the denial of the preliminary injunction on the merits. Answering Brief, p. 36.

The *Whyte* court denied the preliminary injunction but only because there was conflicting evidence on whether any misappropriation had ever occurred. *Whyte*, *supra*, 101 Cal.App. at 1458 ("Accordingly, we must interpret the facts favorably to the order denying a preliminary injunction, and therefore conclude the evidence established Whyte did not threaten to or actually misappropriate Schlage's trade secrets"). In this case, there is no dispute that Defendants misappropriated IFS's trade secrets, they simply argue that the misappropriation all occurred in the past. *Whyte* is, therefore, of no assistance to Defendants.

Defendants also contend that IFS is incorrectly arguing that the proven pasts acts of trade secret misappropriation are in and of themselves sufficient to warrant the injunctive relief being requested and that the authorities they cite demonstrates otherwise. Answering Brief, p. 37. However, IFS is more correctly arguing that the past acts of misappropriation are evidence of continuing trade secret misappropriation and that Defendants are continuing to benefit, and IFS is continuing to be harmed, by that misappropriation. Certainly, none of the cases cited by Defendants on this point supports their conclusion that injunctive relief was properly denied. Defendants cite the Court to a whirlwind of different cases including *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 21 (2008), *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1162 (9th Cir. 2011), *Perfect 10, Inc. v. Google, Inc*., 653 F.3d 976 (9th Cir. 2011), *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc*., 654 F.3d 989, 997-998 (9th Cir. 2011), *Arkansas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014) and *Cisneros v. U.D. Registry, Inc*., 39 Cal.App.4th 548, 575 (1995). Not one of these cases, however, involved trade secret misappropriation.

When Defendants do finally cite a trade secret case on this subject it is inapposite and not helpful to their side. Defendants cite *Language Line Services, Inc. v. Language Services Associates, Inc.*, 2013 WL 1217320 (N.D. Cal. June 25, 2013) but that was a case in which a preliminary injunction which had been in place for three years was vacated by the court after discovery taken by the plaintiff failed to show that the defendants retained any of the physical documents containing the protected customer list information which "is not of the kind that lends itself well to memory, and with the passage of several years, the likelihood of any current LSA employee retaining knowledge of the information contained within the September 2009 Report or Gmail List is remote." Id. at * 3.

Defendants also cite to two out of state district court cases. *UTStarcom, Inc. v. Starnent Networks, Corp.*, 675 F.Supp.2d 854, 872 (N.D. Ill.) stated that "[t]here is a rebuttable presumption of irreparable harm to a plaintiff in cases of trade secret misappropriation." *Id.* at 864. Nevertheless, the court in that case held the plaintiff had failed to establish that the subject information constituted trade secrets or that the defendant had misappropriated or used the information. The court also found that the information which was the subject of the motion was between 7-9 years old and, given the high tech world in which the plaintiff operated, the court would not assume that it had continuing value. *Id.* at 871-872. *International Paper Co. v. Suwyn*, 966 F.Supp. 246 (S.D.N.Y.) cited by Defendants was a case involving the enforceability of a non-compete agreement, not trade secret misappropriation. In sum, Defendants have cited no case law supporting their theory that the past wrongs they committed do not give rise to injunctive relief.

Defendants next move on to contend that IFS's "unfair boost" arguments has been waived and fails on its merits. Answering Brief, p. 39. The argument was not waived as it comes within the rubric of the argument made below that IFS was irreparably harmed by its loss of business to Legacy. (3-ER519-520.) Moreover, this Court has the discretion to consider any issues properly presented even if the precise issue was not raised below. *Singleton v. Wulff*, 428 U.S. 106, 121 (1976).

In terms of their arguments on the merits, Defendants simply repackage and repeat their common refrain that, no matter what they did in the past, and notwithstanding their amazing success in the present, IFS presented no direct evidence correlating the two. They also argue that the evidence of harm presented by IFS was "very weak." This is simply not so. As the District Court found, Defendants used IFS's trade secrets to successfully solicit between 17-20 of IFS's customers. (1-ER-6.) IFS presented argument and evidence that Defendants were able to divert $1,389,362.12 in sales from these customers in a mere few months. There is evidence in the record that a loss of a customer becomes permanent because customers prefer not to switch distributors absent significant cost savings. (7-ER- 1678.) The evidence that IFS presented that injunctive relief was necessary to prevent a commercial disadvantage was thus at least as strong as the evidence that resulted in the plaintiffs being granted injunctive relief *Courtesy*, *Morlife* and *ReadyLink*, the cases that IFS submits should be found controlling here.

Defendants once again cite no authority for the proposition that injunctive relief cannot be granted to eliminate the unfair boost arising from trade secret misappropriation. Defendants attempt to bury in a footnote the fact that California Civil Code Section 3426.2 (a) expressly

states that an "injunction may be continued for an additional time to eliminate commercial advantage that otherwise would be derived from the misappropriation." Defendants ignore and fail to discuss IFS's cited authority, e.g., *WeRide Corp. v. Kun Huang*, 379 F.Supp.3d 834 (N.D. Cal. 2019). Instead, Defendants typically cite cases not on point. Defendants cite and rely on *Independent Technologies, LLC v. Otodata Wireless Network, Inc.,* 836 Fed.Appx. 531(9th Cir. 2020). Answering Brief, p. 44. But that case actually allowed for the very injunctive relief sought here, a prohibition on Defendants soliciting the customers they serviced while employed by IFS. *Id*. at 534. Defendants also cite *A.L. Laboratories, Inc. v. Philips Roxane, Inc.*, 803 F.2d 378 (8th Cir. 1986), an inapposite case decided under Missouri law concerning in relevant part when a 51 month "head start" injunction should commence.

3. **CONCLUSION**

IFS has presented this Court with a litany of authorities from this jurisdiction holding, on facts less egregious, and evidence less compelling than that presented by IFS, that the employers/plaintiffs were entitled to the same relief requested by IFS below including, principally, an injunction against Defendants soliciting any customers serviced by Pablo Morales and Savino Morales when they were employed by IFS. Defendants have failed to distinguish IFS's authorities and responded, instead with a procession of out of state and inapposite case law that fails to rebut IFS's entitlement to an injunction. Because the District Court failed to properly apply the controlling authorities and succumbed to Defendants' parroted refrain of no proof of continued misappropriation or current value of IFS's trade secrets,

the order denying the preliminary injunction should be reversed with instructions that a new order granting the injunction as requested be entered.

DATED:  July 3, 2023        Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON

By:  *s/Emil W. Herich*
      EMIL W. HERICH

Attorneys for PLAINTIFF AND APPELLANT

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32 (a)(7)(C), and Ninth Circuit Rule 32-1, I certify that the attached opening brief is proportionately spaced, has a typeface of 14 points or more, and contains 6,813 words.


DATED: July 3, 2023   Respectfully submitted,

           KILPATRICK TOWNSEND &
           STOCKTON LLP


           By: *s/Emil W. Herich*
             EMIL W. HERICH

           Attorneys for PLAINTIFF AND
           APPELLANT